IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK WILLIAMS-TURNER,<br><br>*Plaintiff,*<br><br>v.<br><br>OFFICER DAN MCMURTRIE, *et al*,<br><br>*Defendants.* | Civil Action No. 2:25-cv-1185<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

*Pro se* Plaintiff Derek Williams-Turner ("Williams-Turner") brings a 13-count complaint against Defendants Officer Dan McMurtrie ("McMurtrie"), Coraopolis Police Department ("CPD") and Borough of Coraopolis ("Coraopolis") (collectively, "Defendants"). (ECF No. 1). Williams-Turner names McMurtrie individually and in his official capacity, CPD, and Coraopolis under 42 U.S.C. § 1983, alleging civil rights violations under the First, Fourth, Eighth, and Fourteenth Amendments. (*Id.* at ¶¶ 1, 6, 9). Williams-Turner also brings claims for defamation, conversion, and intentional infliction of emotional distress under Pennsylvania law at Counts V, XII, and XIII. (*Id.* at ¶¶ 12–13). Defendants moved to dismiss the complaint with prejudice under Rule 12(b)6) of the Federal Rules of Civil Procedure for failure to state a claim. (ECF No. 8). For the reasons set forth below, that motion will be granted.

### I.   FACTUAL BACKGROUND

This case arises from a traffic stop. On July 4, 2025, Williams-Turner was operating a motor vehicle in Coraopolis, Pennsylvania. (ECF No. 1, ¶ 8). McMurtrie stopped the vehicle for a suspected window tint violation and, upon encountering Williams-Turner, stated that he smelled

1

marijuana. (*Id.* at ¶ 8–10). McMurtrie asked if Williams-Turner had a medical marijuana card; Williams-Turner responded that he did and presented it to McMurtrie, along with his driver's license, insurance card, and registration. (*Id.* at ¶ 11). After examining the documents, McMurtrie stated that he saw Williams-Turner engage in a hand-to-hand drug transaction prior to the stop. (*Id.* at ¶ 12). Williams-Turner denied that he did, but McMurtrie "forced" Williams-Turner to exit the vehicle. (*Id.* at ¶ 14). McMurtrie subsequently performed a K9 search, and the dog alerted to the car's passenger door. (*Id.* at ¶¶ 14–15). Williams-Turner did not consent to a search of the car's interior, so McMurtrie had the vehicle towed and impounded to obtain a search warrant. (*Id.* at ¶¶ 17–19). A corresponding search was conducted the next day, July 5, 2025, pursuant to a search warrant. (*Id.* at ¶ 19); (ECF No. 9-1).

When Williams-Turner went to Tiffany Towing to retrieve his vehicle, he learned that $1,203.00 in U.S. currency was seized. (ECF No. 1, ¶ 20). He paid $300 to release his vehicle from the impound and then inquired about the location of the seized currency with Coraopolis Police, who informed him that it was provided to the Pennsylvania Attorney General's Drug Task Force for drug residue testing. (*Id.* at ¶ 20–21).

Williams-Turner was not arrested or charged with any crime, and no drugs or contraband were recovered from Williams-Turner's vehicle. (*Id.* at ¶ 22).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document

integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Here, the Court will consider the search warrant (ECF No. 9-1), attached to Defendants' motion as neither party disputes its authenticity.

### B. *Pro se* pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). "*Pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III.   ANALYSIS

**A. Federal Law Counts**

Williams-Turner brings numerous claims under § 1983 alleging violations of his civil rights under the First, Fourth, Eighth, and Fourteenth Amendments. (ECF No. 1). By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979). In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." (citation omitted)).

As will be explained below, the Court holds that Williams-Turner has failed to state a federal claim for relief. The Court will dismiss all federal claims, and it declines to exercise federal jurisdiction over the state-law claims.

Initially, the Court notes that the CPD is not a proper defendant. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court of the United States held that local governments are "persons" and are subject to suit under § 1983. Following *Monell*, courts have concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *see also Martin v. Red*

*Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (per curiam) (noting that "the Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983"); *Hadesty v. Rush Twp. Police Dep't*, Civil Action No. 3:14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016) ("A municipal police department cannot be sued separately from the municipality of which it is a part because it is not a separate independent entity."); *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008) ("It is well-settled that police departments operated by municipalities are not 'persons' amenable to suit under § 1983."). The CPD is not amenable to suit under § 1983. Furthermore, the CPD cannot be held liable for the actions of McMurtrie under a *respondeat superior* theory of liability. All claims against the CPD will be dismissed with prejudice,[1] and it will be terminated as a party to this action.

### 1. *Claims against McMurtrie*

#### a. *First Amendment Claims–Counts VI and IX*

Williams-Turner alleges harassment and retaliation (Count VI) and retaliation for exercise of constitutional rights in violation of the First Amendment (Count IX). (ECF No. 1, ¶¶ 35, 38). To plead a claim for First Amendment retaliation, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected

---

[1] The Court holds that amendment as to the CPD would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

conduct and the retaliatory action. *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017). At Count VI, Williams-Turner generally alleges that McMurtrie harassed and retaliated against him in violation of his rights to free expression and due process. (ECF No. 1, ¶ 35). At Count IX, he alleges that McMurtrie retaliated against him for his refusal of consent to a search of his vehicle. (*Id.* at ¶ 38).

It is unclear what First Amendment protected activity Williams-Turner engaged in, and it is similarly unclear what retaliatory actions McMurtrie allegedly undertook. Williams-Turner denied consent to a search of his vehicle, so McMurtrie impounded it to obtain a search warrant. This did not implicate Williams-Turner's First Amendment rights, as his right to refuse a search is protected by the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973).

Because Williams-Turner has pleaded no facts to support his claims at Counts VI or IX, and because the alleged conduct does not implicate the First Amendment, they will be dismissed with prejudice. The Court finds that amendment of these claims would be futile.

### b. Fourth Amendment Claims

Williams-Turner alleges unlawful search and seizure (Count I), unlawful detention, excessive force, and unlawful property seizure (Count II), false arrest and illegal detention (Count III), and malicious prosecution (Count IV) in violation of the Fourth Amendment. (ECF No. 1, ¶¶ 27–33).

Williams-Turner alleges that McMurtrie lacked probable cause to subject him to a search and seizure. (*Id.* at ¶ 28). The touchstone of the Fourth Amendment is "reasonableness" as measured in objective terms. *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (citation omitted). Probable cause is the standard by which a court assesses whether a police officer's search or seizure was permissible under the Fourth Amendment. *Bufkin v. Collins*, 604 U.S. 369, 384 (2025). Probable

cause is determined "with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest." *United States v. Outlaw*, 138 F.4th 725, 728 (3d Cir. 2025) (quoting *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007)). A traffic stop is a seizure, so the Fourth Amendment requires that it be reasonable. *United States v. Ross*, 151 F.4th 487, 494 (3d Cir. 2025) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). A traffic stop is reasonable when an officer has reasonable suspicion that a seized motorist committed a traffic violation. *Ross*, 151 F.4th at 494 (citation omitted). More generally, reasonable suspicion exists when an officer has a particularized and objective basis for suspecting the apprehended motorist of criminal activity. *Kansas v. Glover*, 589 U.S. 376, 380 (2020).

Construing the facts in the light most favorable to Williams-Turner, McMurtrie had reasonable suspicion to stop Williams-Turner's vehicle. Having believed that he witnessed Williams-Turner engage in a hand-to-hand drug transaction, McMurtrie had a particularized and objective basis for suspecting Williams-Turner of criminal activity. *See id*; (ECF No. 1, ¶ 12). Additionally, McMurtrie suspected that the windows on Williams-Turner's vehicle were excessively tinted in violation of Pennsylvania law. *See* 75 Pa.C.S.A. § 4524(e); (ECF No. 1, ¶ 9). Thus, the initial seizure of Williams-Turner's vehicle was reasonable.

As pleaded, the "dog sniff" and impoundment search of Williams-Turner's vehicle were constitutionally reasonable too. A dog sniff conducted during a lawful traffic stop, and for no purpose other than to reveal the location of an unlawfully possessed substance, does not violate the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005).

As to the search, McMurtrie detected the odor of marijuana upon encountering Williams-Turner. (ECF No. 1, ¶ 10). When particularized to a vehicle and its sole occupant, the smell of

marijuana alone can create probable cause to search that vehicle. *Outlaw*, 138 F.4th at 729.² The smell of marijuana, coupled with McMurtrie's belief that Williams-Turner had engaged in a drug transaction, provided him with probable cause to impound the vehicle and seek a warrant to search it. But even if McMurtrie had not impounded the vehicle and then sought a warrant, it is well-settled that "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976) (citations omitted).³ And "the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369. Once in police custody, inventory searches of impounded vehicles may be reasonable under the Fourth Amendment even if they are not

---

² The Pennsylvania Supreme Court has held that "the smell of marijuana *alone* cannot create probable cause to justify a search under the state *and* federal constitutions." *Commonwealth v. Barr*, 266 A.3d 25, 41 (Pa. 2021) (emphasis added). That court concluded that Pennsylvania's Medical Marijuana Act made marijuana "no longer *per se* illegal" in Pennsylvania. *Id.* But the smell of marijuana alone *is* sufficient to create probable cause under the U.S. Constitution, as recently held by the United States Court of Appeals for the Third Circuit. *See supra Outlaw*, 138 F.4th at 729. The Court is compelled to note that, notwithstanding what laws Pennsylvania passed purporting to legalize marijuana for certain purposes, federal law is supreme and marijuana remains illegal under federal law. *See* U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding").

³ Under Article I, Section 8 of the Pennsylvania Constitution, the Pennsylvania Supreme Court recognizes an "automobile exception" more limited than its federal counterpart. Under Article 1, Section 8, warrantless vehicle searches require both probable cause and exigent circumstances. *Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020). Whether exigent circumstances exist requires a balancing of a variety of factors, including the gravity of an offense, whether a suspect is reasonably believed to be armed, whether there is a clear showing of probable cause, the likelihood that a suspect will escape if not apprehended, and the likelihood that evidence will be destroyed if time passes to obtain a warrant. *Com. v. Roland*, 637 A.2d 269, 270–271 (Pa. 1994) (citations omitted). Here, McMurtrie obtained a search warrant. Even if he had not, exigent circumstances were likely present with respect to a clear showing of probable cause, the likelihood of Williams-Turner's escape, and the possibility that evidence would be destroyed.

conducted pursuant to a warrant based on probable cause. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *see also Michigan v. Thomas*, 458 U.S. 259, 261 (1982) ("when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.").

Nevertheless, McMurtrie obtained a search warrant before searching the impounded vehicle, and the affidavit of probable cause supporting that warrant is presumptively valid. (ECF No. 9–1); *see Franks v. Delaware*, 438 U.S. 154, 171 (1978). An unlawful search and seizure cannot be inferred from the face of the complaint, nor could Williams-Turner plead additional facts that would adduce one. Consequently, the Court will dismiss Count I with prejudice, as the Court finds that leave to amend would be futile.

At Count II, Williams-Turner alleges unlawful detention, excessive force, and an unlawful property seizure. (ECF No. 1, p. 4). However, he does not specify how he was unlawfully detained or how he experienced excessive force, nor does he describe what property was unlawfully seized. The Court is without sufficient factual material to analyze these claims and will dismiss them without prejudice as to McMurtrie. Williams-Turner will be granted leave to amend these claims.

At Count III, Williams-Turner alleges false arrest/illegal detention. Claims for false arrest challenge "detention without legal process[.]" *Rivera-Guadalupe v. Cty. of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024) (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). Moreover, a cause of action for false arrest "covers damages only for the time of detention until the issuance of process or arraignment, and not more[.]" *Id.* at 300 (citations omitted). Williams-Turner alleges that he was unlawfully detained, but he also states that he was not charged with any crime. (ECF No. 1, ¶ 32); (ECF No. 1, ¶ 22). Because a cause of action for false arrest does not exist absent an

arrest, this claim will be dismissed with prejudice as the Court finds that leave to amend would be futile.

At Count IV, Williams-Turner alleges malicious prosecution. A malicious prosecution claim requires that a plaintiff have been charged with a crime absent probable cause. *See Chiaverini v. Cty. of Napoleon, Ohio*, 602 U.S. 556, 564 (2024). Williams-Turner was not charged with any crime. (ECF No. 1, ¶ 32). Accordingly, this claim will be dismissed with prejudice as the Court finds leave to amend would be futile.

### c. Eighth Amendment Claims–Count II

Under Count II, Williams-Turner also brings claims for unlawful detention, excessive force, and property seizure under the Eighth Amendment. (*Id.* at p. 4). The Eighth Amendment only applies to excessive bail and fines or cruel and unusual punishment, and Williams-Turner pleads that he was not charged with a crime. *See* U.S. Const. amend. VIII; (ECF No. 1, ¶ 32). Therefore, the Eighth Amendment is not implicated, and this claim will be dismissed with prejudice as the Court finds leave to amend would be futile.

### d. Fourteenth Amendment Claims–Counts V, X and XI[4]

Under the Fourteenth Amendment, Williams-Turner brings claims for defamation at Count V, a violation of procedural due process at Count X, and abuse of process at Count XI. (*Id.* at ¶¶ 38–39).

---

[4] Williams-Turner raises three discrete claims under the Fourteenth Amendment–defamation at Count V, a procedural due process violation at Count X, and abuse of process at Count XI. (ECF No. 1, ¶¶ 38–39). With respect to all other claims brought under the Fourteenth Amendment and in conjunction with § 1983, the Court does not conduct a separate analysis. *See Parker v. N.J. Motor Vehicle Comm'n*, 158 4th 470, 477, n.20 (3d Cir. 2025) (citing *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) ("Inasmuch as § 1983 affords a remedy for infringement of one's constitutional rights, identical claims raised under the Fourteenth Amendment are redundant, rendering the outcome of the § 1983 claims dispositive of the independent constitutional claims.")).

Under § 1983, defamation is actionable only if it occurs in the course of, or is accompanied by, a change or extinguishment of a right or status guaranteed by state law or the Constitution. *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 701–12 (1976)). *Paul* imposes a "formidable barrier" to defamation claims arising under the Fourteenth Amendment, as it held that reputation alone is not an interest protected by the Due Process Clause. *Id.* An "additional deprivation" because of reputational damage must occur to make such a claim actionable, such as impairment of one's interest in present or future employment. *Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1078 (3d Cir. 1997). Williams-Turner has pleaded no facts that demonstrate or allow for the inference that his reputation was damaged here, let alone that he consequently suffered harm because it was. It is implausible that any additional pleading would. The Court will accordingly dismiss his defamation claim under the Fourteenth Amendment with prejudice, as it finds that amendment would be futile.

A procedural due process claim consists of two elements: (1) deprivation by state action of a protected interest in life, liberty, or property, and (2) inadequate state process. *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Both elements must be satisfied to sustain such a cause of action. *See id.* ("Importantly, the Court has stated that a procedural due process claim 'is not complete when the deprivation occurs' … the claim is only 'complete' when 'the State fails to provide due process.'") (internal citations omitted). Williams-Turner alleges that he was deprived of property without notice or a meaningful opportunity to be heard. (ECF No. 1, ¶ 38). He does not specify what property he was deprived of, nor does he provide any details about the process that allegedly deprived him. Without those factual allegations, the Court cannot evaluate that claim. It will be dismissed without prejudice. Williams-Turner will be granted leave to amend this claim.

As to abuse of process, a plaintiff must generally show that a defendant used legal process in a way that perverted that process and caused harm to the plaintiff. *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (citations omitted).[5] Accordingly, a court asks whether legal process has been used "as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* The term "legal process" is generally used within the litigation context. *See id.* at 306–07. Williams-Turner alleges that McMurtrie misused legal authority to coerce or punish him outside of legitimate law enforcement purposes. (ECF No. 1, ¶ 39). He pleads no facts to substantiate such a claim. Even if he could, that claim does not arise out of allegedly abusive litigation. His abuse of process claim will therefore be dismissed with prejudice as it is meritless, and the Court finds amendment would be futile.

### 2. Claims against Coraopolis–Counts II, VII and VIII

The first consideration with a *Monell* claim is whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (*en banc*) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). If a constitutional violation has been properly alleged, a municipal entity may be liable for it under § 1983 if the violation was a direct result of the entity's policy, custom or practice.[6] *Monell*, 436

---

[5] Williams-Turner brings his claim for abuse of process under the Fourteenth Amendment and § 1983. (ECF No. 1, ¶ 39). Abuse of process arises under the common law, so the Court may only hear that claim if it can exercise its supplemental jurisdiction over it. *See General Refractories Co.*, 337 F.3d at 304–09 (describing an "abuse of process" cause of action by discussing authority from Pennsylvania and other states, as well as the Second Restatement of Torts). Nevertheless, how Williams-Turner brings his abuse of process claim is immaterial to the Court's consideration of the claim.

[6] "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d

U.S. at 695. However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may show that either an official policy of the municipality was the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690. In either scenario, the plaintiff has the burden to show that the policy or custom was implemented or acquiesced in by a policymaker. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). "[M]unicipal liability may be imposed for a single decision by municipal policymakers ... where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 480-83.

Further, if the alleged policy or custom at issue is a failure to train or supervise, the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary ...." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely ... result in the

---

Cir. 1996)). It also can be made where an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes," *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Customs are "'practices of state officials ... so permanent and well settled' as to virtually constitute law." *Berg*, 219 F.3d at 275 (citations omitted).

14

violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton*, 489 U.S. at 390.

The *Monell* inquiry asks whether a municipality, like Coraopolis, was deliberately indifferent to the risk of a constitutional violation. As noted, to sufficiently state a *Monell* claim, a plaintiff must identify the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker, and demonstrate causation. *Monell* claims are based on an underlying constitutional violation, and no such claim exists as noted in the proceeding sections.

Even if Williams-Turner had come forth with a constitutional violation, he failed to plead an adequate factual basis that it was the direct result of Coraopolis's policy, custom, or practice. Williams-Turner does not plead any facts in support of a claim that Coraopolis maintains policies or customs that lead to unlawful detentions, uses of excessive force, or unlawful property seizures. (ECF No. 1, ¶ 31). Williams-Turner does not plead any factual support for his claim that Coraopolis maintains customs that fail to properly train or supervise police officers. (*Id.* at ¶ 36). He does not plead factual material describing an alleged failure to train or supervise by Coraopolis. (*Id.* at ¶ 37). Williams-Turner's pleadings do not allege the existence of any official policy that would give rise to inferences of any of the above-listed violations. Therefore, Counts II, VII, and Count VIII will be dismissed without prejudice, and Williams-Turner will be granted leave to amend.

### B. Pennsylvania Law Counts

A district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c)(3), unless considerations of judicial economy, convenience, or fairness to the parties provide an

affirmative justification for exercising supplemental jurisdiction. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). The Court finds that no factors or extraordinary circumstances exist that would warrant it exercising supplemental jurisdiction over Williams-Turner's state-law claims (i.e., defamation at Count V, conversion at Count XII, and intentional infliction of emotional distress at Count XIII. (ECF No. 1, ¶¶ 40–41)). It will dismiss such claims without prejudice for him to assert them in state court.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion will be granted. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

2/11/26
Dated